AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a gold Apple iPhone cellular telephone | Case No. 23-8481 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _____12/4/23____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __11/20/23  5:25pm__

_Judge's signature_

City and state: <u>Phoenix, Arizona</u>            <u>Honorable John Z. Boyle, U.S. Magistrate Judge</u>
                                                        *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a gold Apple iPhone cellular telephone. The SUBJECT TELEPHONE is currently located at the DEA Office.

This warrant authorizes the forensic examination of the SUBJECT TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) including:

    a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

    d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e.  any information recording schedule or travel;

    f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephones.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of a gold Apple iPhone cellular telephone | Case No. 23-8481 MB |
|---|---|

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit of Special Agent Jacquelyn K. Czopek**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA D. Matthew Conti

Digitally signed by DAVID CONTI
Date: 2023.11.20 15:59:01 -07'00'

_____
*Applicant's Signature*

Jacquelyn K. Czopek, Drug Enforcement Administration
*Printed name and title*

Sworn to telephonically and signed electronically.

Date: 11-20-23   5:25p—

_____
*Judge's signature*

City and state: Phoenix, Arizona

Honorable John Z. Boyle, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a gold Apple iPhone cellular telephone. The SUBJECT TELEPHONE is currently located at the DEA Office.

This warrant authorizes the forensic examination of the SUBJECT TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.       Any records and information found within the digital contents of the SUBJECT TELEPHONE that relate to violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance including:

     a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

     b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

     c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

     d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

     e.  any information recording schedule or travel;

     f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

     g.  contextual information necessary to understand the above evidence.

2.       Any records and information found within the digital contents of the SUBJECT TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephones.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Jacquelyn K. Czopek, being first duly sworn, hereby deposes and states as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine a gold Apple iPhone cellular telephone (SUBJECT TELEPHONE) described more particularly in Attachment A and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.      I am a Special Agent with the United States Drug Enforcement Administration (DEA).  I have been so employed since October 2010.  I am a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants.  I am currently assigned to the DEA Phoenix, Arizona Field Division, Strike Force. Strike Force conducts narcotics investigations into International Drug Trafficking Organizations (DTOs) and specializes in the detection, penetration, and dismantlement of these organizations, often coordinated with the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Postal Inspectors, and state/local law enforcement personnel designated as Task Force Officers (TFOs).  I am also a cross-certified Federal Peace Officer with the Maricopa County Sheriff's Office, in accordance with A.R.S. § 13-3875, and may exercise all law enforcement powers of an Arizona Peace Officer.

3.      I have a Bachelor's of Science (B.S.) degree in Psychology from Augustana College in Rock Island, Illinois, and a Master's Degree in Criminal Justice from Lewis University in Romeoville, Illinois.   I have completed the Drug Enforcement Administration's Basic Agent Training.  The curriculum for the nineteen-week course

includes federal law regarding drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, and electronic surveillance.

4.     By virtue of my employment as a Special Agent, I have performed various tasks, which include; investigations into the distribution of marijuana, methamphetamine, heroin, cocaine, fentanyl, Oxycodone, Hydrocodone, Alprazolam (Xanax), as well as the manufacture of methamphetamine and anabolic steroids.  I have participated in both physical and electronic surveillance, which has led to or assisted in the seizure of United States Currency (USC), distributable amounts of marijuana, heroin, cocaine, methamphetamine, Oxycodone, Hydrocodone, Tramadol, fentanyl, Promethazine with Codeine, anabolic steroids, chemical precursors, as well as drug ledgers, drug-related paraphernalia and other documents and records used to facilitate the activities of DTOs.

5.     I have participated in many aspects of drug investigations, including the execution of multiple search warrants, Grand Jury subpoenas, and ex parte orders for evidence of drug-related offenses, including narcotics, drug-related ledgers, paraphernalia, records, and evidence of money laundering crimes through the placement and layering of large amounts of USC.

6.     In the course of conducting drug investigations, I have personally interviewed confidential informants (CIs), cooperating defendants (CDs), sources of information (SOIs) and/or persons involved in the distribution of illegal and diverted drugs and the movement of proceeds from illegal drugs. I have also been an affiant for cellular telephone tracking orders, mobile trafficking devices (MTDs), search warrants, seizure warrants, and federal complaints.

7.     The statements contained in this Affidavit are based on information derived from my personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement

officers; analysis of public records; and analysis of telephone records.

8.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

9.     On March 20, 2023, investigators with the Phoenix Drug Enforcement Administration (DEA) were conducting surveillance at an Airbnb residence in Scottsdale, Arizona ("Airbnb"). While on surveillance, investigators observed a white Mercedes sedan arrive the at the Airbnb. The driver, identified as Eduardo CASTRO-Ruiz ("CASTRO"), approached the front door and walked towards the carport while the passengers were observed looking around. CASTRO waved a second male, later identified as Mujahid RAZZAG AL RAGGAD aka Mikey Ikey ("RAZZAG AL RAGGAD") and David MORENO-Briseno ("MORENO") towards the carport. At this time, investigators observed MORENO retrieve a large black duffle bag from the rear compartment of the Mercedes and the front passenger, RAZZAG AL RAGGAD, was observed carrying a plastic bag from the front passenger compartment of the Mercedes. All three subjects then entered the Airbnb. Approximately ten minutes later, investigators observed all three males exit the residence. At this time, MORENO exited the Airbnb carrying a large box which was inside a clear bag. All three subjects entered the Mercedes and left the area. As the Mercedes left the area, investigators established surveillance and Gila River Police Department (GRPD) attempted to conduct a traffic stop for a traffic violation. As the GRPD officer activated his emergency lights, the Mercedes failed to stop and fled from the scene, weaving in and out of oncoming traffic. Based on these observations, investigators believed CASTRO, RAZZAG AL RAGGAD, and MORENO brought an unknown quantity of illegal drugs to the Airbnb and left with the drug proceeds.

10.    At approximately 4:00 p.m., investigators observed multiple occupants, including John REED ("REED") and Curtis HINES ("HINES") exit the Airbnb carrying multiple bags. They placed bags and other items in a Lincoln and a Cadillac. Based on their actions, investigators believed that the occupants of the Airbnb had been notified of the attempted stop of the Mercedes and they were fleeing the Airbnb. At approximately 4:04 p.m., investigators approached the occupants, identified as HINES, REED, Leroy SMITH ("SMITH"), and Alexis ARRINGTON ("ARRINGTON") in the front yard and detained the individuals.

11.    United States District Court for the District of Arizona Magistrate Deborah M. Fine authorized a search warrant for the Airbnb and the vehicles which were parked on the Airbnb's property. Upon searching the Lincoln, investigators located the black duffel bag and a clear plastic bag which contained approximately 23.96 kilograms of round blue pills marked "M30." Investigators subsequently tested a sample of the pills removed from the black duffle bag using a spectrometer. Those tests returned positive for characteristics of fentanyl.

12.    On March 27, 2023, United States District Court for the District of Arizona Magistrate Eileen S. Willett authorized a search warrant for the telephone utilized by HINES ("HINES Telephone"). During the search of the HINES Telephone, investigators located a contact saved as "Stretch" with telephone number (623) 301-2595 ("2595 Telephone"), the telephone number assigned to the telephone identified as utilized by CASTRO.

13.    Investigators conducted a review of toll records from the 2595 Telephone, which revealed telephone number (480) 562-0453 ("the 0453") was a high frequency contact of CASTRO. Investigators issued a subpoena to the AT&T for the records relative to the 0453 and learned it was subscribed to "Davib Moreno" at 8126 S. 48th Ln., Laveen, AZ. Investigators searched the Arizona Department of Motor Vehicle records and learned

that David Filiberto MORENO-Briseno had an Arizona driver's license which listed 8126 S. 48th Lane, Laveen, AZ as his residence.  Investigators reviewed MORENO's driver's license photograph and recognized him as one of the Hispanic males observed during the drug transaction that occurred on March 20, 2023 in Scottsdale. Additionally, toll records revealed the 0453 Telephone was in contact with CASTRO via the 2595 Telephone 20 times on March 20, 2023.

14.    On October 25, 2023, MORENO was indicted in the District of Arizona before an empaneled grand jury for Conspiracy to Distribute Controlled Substances (21 U.S.C. § 846) and Distribution of Fentanyl (21 U.S.C. § 841) CR-23-01468-004-PHX-DJH.  An arrest warrant was issued for MORENO.

15.    On November 1, 2023, investigators established surveillance in the area of MORENO's previously identified residence located 8126 S. 48th Ln., Laveen, Arizona ("the 48th Ln. Residence") to stop and arrest MORENO after he left the 48th Ln. Residence. At approximately 1:56 p.m., investigators observed MORENO arrive at the 48th Ln. Residence in a silver Nissan Altima bearing Arizona temporary registration 59T0665 ("the Altima"). Arizona Motor Vehicles Division (AZMVD) records reveal the temporary registration assigned to the Altima is an expired thirty-day permit registered to Ana Montano ("Montano") at 301 N. Ithaca St., Lot 31, Chandler, Arizona.  After arriving, MORENO exited the driver's seat of the Altima and was observed walking towards the 48th Ln. Residence. Soon after, a Hispanic female resembling Montano exited the 48th Ln. Residence and walked towards the Altima with MORENO. For approximately fifteen minutes, MORENO was observed walking back and forth from the Altima to the 48th Ln. Residence while speaking with the female believed to be Montano, as well as an older Hispanic male who was observed in the yard of the 48th Ln. Residence

16.    At approximately 2:14 p.m., investigators observed MORENO enter the Altima as the sole occupant. As MORENO departed the area, investigators activated their

emergency lights and sirens and attempted to stop him. MORENO disregarded law enforcement's lights and sirens and he accelerated over a residential sidewalk and into the yards of nearby residences to escape. Investigators attempted to follow MORENO, but lost sight of the Altima as MORENO ran red traffic lights while exceeding the speed limit. After attempting to locate MORENO and the Altima, investigators re-established surveillance at the 48th Ln. Residence, but MORENO did not return.

17.     Following MORENO's flight from law enforcement, investigators received updated tolls for the 0453 Telephone. Toll records revealed following the attempted arrest of MORENO, at approximately 2:15 p.m., the 0453 Telephone made an outgoing call to telephone number (623) 225-5092, a telephone subscribed to "Anna Montano" at 8126 S. 48th Ln., Laveen, AZ (48th Ln. Residence). Records also revealed the 0453 Telephone was in communication with the 5092 Telephone ten times on November 1, 2023 through 8:49 p.m.

18.     On November 7, 2023, the Honorable Michael T. Morrissey, authorized a GPS Tracking warrant over the 0453 Telephone. On the morning of November 8, 2023, I monitored the GPS locations of the 0453 Telephone and noted that beginning at approximately 12:29 a.m., the data indicated that the 0453 Telephone was withing a radius of 135 meters in the area the 48th Ln. Residence.  The 0453 Telephone continued to ping at varying radiuses of 135 to 961 meters throughout the early morning hours and until 10:09 a.m., covering the 48th Ln. Residence.

19.     On November 8, 2023, at approximately 10:15 a.m., investigators established surveillance in the area of the 48th Ln Residence. Upon arrival, I observed the Altima parked in front of the residence. At approximately 11:10 a.m., I observed a Hispanic male believed to be MORENO exit the 48th Ln. Residence and enter the Altima as the sole occupant. Soon after, the Altima departed the area and investigators established mobile surveillance of the Altima. At approximately 11:24 a.m., the data indicated that the 0453

6

Telephone was withing a radius of 719 meters of Loop 202 at Van Buren Rd. which was within the same area that the Altima was located. Investigators continued to follow the Altima, but lost sight of the vehicle briefly in Avondale, Arizona.

20.     At approximately 11:54 a.m., the data indicated that the 0453 Telephone was within a 165-meter radius at the southeast corner of 107th Ave. and Indian School Rd. in Avondale. At approximately 12:03 p.m., I arrived in the area of shopping center located at 10665 W. Indian School Rd., Avondale, AZ, the area in which the 0453 Telephone was located. Upon arrival, I located the Altima parked unoccupied in the southeast corner of the parking lot. Investigators established surveillance in the area of the Altima in order to apprehend MORENO returning to the Altima. At approximately 12:08 p.m., I observed MORENO exit a restaurant with two Hispanic males. As they walked towards the Altima, investigators activated their emergency lights and sirens, identified themselves as law enforcement, and arrested MORENO without incident.  The males were detained and investigators identified the males as a juvenile and Alberto CAMACHO-Osorio ("CAMACHO"). CAMACHO was observed on multiple operations during the course of this investigation and is known to be on federal probation for an alien smuggling charge. During a search and pat down of CAMACHO, investigators located approximately $4,400.00 in his pocket. CAMACHO claimed the money belonged to his sister. The juvenile and CAMACHO, along with the USC were released.

21.     During a search of MORENO, I located and seized an Apple iPhone cellular telephone with a gold back (SUBJECT TELEPHONE) from his person. On the lock screen of the SUBJECT TELEPHONE was a text message from telephone number (213) 760-4478 ("4478 Telephone") that read "Lmk when those shoes in."  Throughout my experience in conducting drug investigations, I have learned that "shoes" is often a code word used when referring to drugs. Based on this text message, I believe the user of the

4478 Telephone was asking MORENO via the SUBJECT TELEPHONE to notify him/her when he (MORENO) received the unspecified drugs.

22.     Following MORENO's arrest, he confirmed the number assigned to the SUBJECT TELEPHONE to be (480) 562-0453, the 0453 Telephone. Therefore, I believe the SUBJECT TELEPHONE will contain additional drug related communications not only with the 4478 Telephone but also with CASTRO, RAZZAG AL RAGGAD, as well other co-defendants who were involved in the March 20, 2023 fentanyl seizure as well as other drug transactions that MORENO has been a part of during the course of this investigation.

23.     The SUBJECT TELEPHONE is currently in the lawful possession of the DEA.  Therefore, while the DEA might already have all necessary authority to examine the devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

24.     The SUBJECT TELEPHONE is currently in storage at the DEA office in the District of Arizona.  In my training and experience, I know that the SUBJECT TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT TELEPHONE first came into the possession of the DEA.

**III.     ITEMS TO BE SEIZED**

25.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT TELEPHONE.

26.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with toll records, your Affiant knows the following:

a.     Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities.  Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT TELEPHONES.

b.     Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities.  Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT TELEPHONE.

c.     Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions.  Moreover, drug traffickers commonly take photographs of their firearms.  Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT TELEPHONE.

27.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT TELEPHONE.

## IV.     DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

28.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT TELEPHONE.  Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

29.   *Probable cause.*   Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT TELEPHONE for at least the following reasons:

a.   Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime.   The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense.   The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.   Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.   Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little

10

or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

   d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   30. *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT TELEPHONE because:

   a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

11

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

31.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT TELEPHONE, including the use of computer-assisted scans.

32.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

13

V.   **CONCLUSION**

33.   Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance) and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) are likely to be found in the contents of the SUBJECT TELEPHONE further described in Attachment A.

Jacquelyn K. Czopek
Drug Enforcement Administration

Subscribed and sworn to before me this ___20+___ day of November, 2023.

HONORABLE JOHN Z. BOYLE
United States Magistrate Judge

14